# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HOUSTON FEDERATION OF TEACHERS, TEXAS AMERICAN FEDERATION OF TEACHERS, JACKIE ANDERSON, MAXIE HOLLINGSWORTH, AND DANIEL SANTOS, | § § § § § § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CAUSE NO. 5:20-CV-222-XR |
| | § | |
| THE TEXAS EDUCATION AGENCY; MIKE MORATH, COMMISSIONER OF EDUCATION, in his official capacity, | § § § § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

/s/ Michael R. Abrams
ANDREW B. STEPHENS
Attorney-in-Charge
Texas Bar No. 24079396
MICHAEL R. ABRAMS
Assistant Attorneys General
Texas Bar No. 24087072
Office of the Attorney General
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................. ii

Index of Authorities ....................................................................................... iii

Introduction .................................................................................................... 1

Statement of Facts .......................................................................................... 2

Motion to Transfer Venue ............................................................................... 5

Motion to Dismiss ........................................................................................... 7

Standard of Review .......................................................................................... 7

Argument ......................................................................................................... 8

I.   Plaintiffs Lacks Standing. ......................................................................... 8

   A.   The individual plaintiffs have not alleged a specific injury ............... 8

   B.   The labor unions cannot demonstrate associational or
       organizational standing ................................................................. 10

II.  The Court Should Abstain From Deciding Plaintiffs' Claims ............... 14

III. Sovereign Immunity Bars Plaintiffs' Claims ......................................... 15

IV.  This Suit Should Be Dismissed For Failure to State a Claim. ............. 16

Conclusion ..................................................................................................... 20

Certificate of Filing and Service .................................................................. 22

ii

# INDEX OF AUTHORITIES

Page(s)

## CASES

*Ackerson v. Bean Dredging LLC,*
589 F.3d 196 (5th Cir. 2009) ........................................................................... 7

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,*
821 F.3d 352 (2d Cir. 2016) ........................................................................... 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................... 8

*Bisong v. Univ. of Houston,*
2006 WL 2414410 (S.D. Tex. Aug. 18, 2006) .............................................. 16

*Chisom v. Roemer,*
501 U.S. 380, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991) .......................... 17

*City of Austin v. Paxton,*
943 F.3d 993 (5th Cir. 2019) ......................................................................... 15

*Club Retro, L.L.C. v. Hilton,*
568 F.3d 181 (5th Cir. 2009) ......................................................................... 18

*Comm'n,*
432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) .............................. 10

*Concerned Home Care Providers, Inc. v. Cuomo,*
783 F.3d 77 (2d Cir. 2015) ............................................................................. 13

*Conn v. Gabbert,*
526 U.S. 286, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999) .......................... 13

*Coon v. Ledbetter,*
780 F.2d 1158 (5th Cir. 1986) ....................................................................... 13

*Danos v. Jones,*
652 F.3d 577 (5th Cir. 2011) ......................................................................... 13

*Distributed v. U.S. Dep't of State,*
No. 1:15-cv-372, 2018 WL 3614221 (W.D. Tex. July 27, 2018) ............... 12

*Draper v. Healey,*
827 F.3d 1 (1st Cir. 2016) (dismissing ........................................................ 11

*Fair Elections Ohio v. Husted,*
770 F.3d 456 (6th Cir. 2014) ......................................................................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) .............................. 8

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.,*
17 F. Supp. 3d 599 (S.D. Tex. 2014) .............................................................. 9

*Georgia Republican Party v. Sec. & Exch. Comm'n,*
888 F.3d 1198 (11th Cir. 2018) ..................................................................... 10

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,*
313 F.3d 305 (5th Cir. 2002) ........................................................................... 7

*Havens Realty Corp. v. Coleman,*
 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) .......................................... 11

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,*
 143 F.3d 1006 (5th Cir. 1998) ................................................................... 7

*Houston Indep. Sch. Dist. v. Texas Educ. Agency,*
 2019 WL 6894474 (W.D. Tex. Dec. 18, 2019) ........................................ 4

*In re Katrina Canal Breaches Litig.,*
 495 F.3d 191 (5th Cir. 2007) ................................................................... 8

*In re Radmax, Ltd.,*
 720 F.3d 285 (5th Cir. 2013) ............................................................ 5, 6

*Izadjoo v. Helix Energy Sols. Grp., Inc.,*
 237 F. Supp. 3d 492, 506 (S.D. Tex. 2017) .......................................... 19

*Kowalski v. Tesmer,*
 543 U.S. 125, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) .......................... 14

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ...................... 8, 11

*McCleskey v. Kemp,*
 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987) .......................... 19

*Moore v. Detroit Sch. Reform Bd.,*
 293 F.3d 352 (6th Cir. 2002) ........................................................... 17, 18

*N.A.A.C.P. v. City of Kyle, Tex.,*
 626 F.3d 233 (5th Cir. 2010) ......................................................... 10, 11, 12

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
 491 U.S. 350 (1989) ............................................................................ 15

*Pennhurst State Sch. & Hosp. v. Halderman,*
 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ............................... 16

*Perez v. Texas A&M Univ. at Corpus Christi,*
 2013 WL 6230353 (S.D. Tex. Dec. 2, 2013) .......................................... 16

*Phillips v. Snyder,*
 836 F.3d 707 (6th Cir. 2016) ................................................................ 17

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) .......................... 16

*Quinn v. Illinois,*
 887 F.3d 322 (7th Cir. 2018) ........................................................... 17, 18

*Ramming v. United States,*
 281 F.3d 158 (5th Cir. 2001) ................................................................. 7

*Rodriguez v. Popular Democratic Party,*
 457 U.S. 1, 102 S. Ct. 2194, 72 L. Ed. 2d 628 (1982) .............................. 9

*Ross v. Texas Educ. Agency,*
 2008 WL 4746773 (S.D. Tex. Oct. 27, 2008) ........................................ 18

*Sailors v. Bd. of Ed. of Kent Cty.,*
 387 U.S. 105, 87 S. Ct. 1549, 18 L. Ed. 2d 650 (1967) ........................... 10

iv

*Searcy v. Williams*,
    656 F.2d 1003 (5th Cir. 1981) ........................................................ 17

*Summers v. Earth Island Inst.*,
    555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ........................... 10

*Thornburg v. Gingles*,
    478 U.S. 30, 106 S. Ct. 2752, 92 L. Ed. 2d 25 (1986) ........................... 18

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) ........................................................ 19

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................... 13

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) .................................................................... 16

### STATUTES

28 U.S.C. § 1391(b)(1) ...................................................................... 5
28 U.S.C. § 1404(a) ......................................................................... 5
42 U.S.C. § 1983 ...................................................................... passim
52 U.S.C. § 10301(a) ....................................................................... 18
Tex. Educ. Code § 4.001(a) ................................................................. 1
Tex. Educ. Code § 7.021 ................................................................ 1, 15
Tex. Educ. Code § 11.1515 .................................................................. 2
Tex. Educ. Code § 39A.001 .................................................................. 2
Tex. Educ. Code § 39A.201 ................................................................. 10
Tex. Educ. Code § 39A.204 .................................................................. 9
Texas Educ. Code § 11.001 .................................................................. 2

### RULES

Federal Rule of Civil Procedure 12(b)(6) .................................................. 7
Federal Rules of Civil Procedure 12(b)(1) ............................................. 7, 11

## INTRODUCTION

"The mission of the public education system of this state is to ensure that all Texas children have access to a quality education that enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation." Tex. Educ. Code § 4.001(a). In pursuit of that mission, the Texas Education Agency (TEA) oversees primary and secondary public education throughout the State of Texas. *See* Tex. Educ. Code § 7.021. TEA ensures that public school districts responsibly steward public funds, comply with state and federal laws, and successfully educate Texas children. *Id.*; *see also id.* § 39.001 *et. seq.* As part of this mandate, the Texas Legislature has granted the Commissioner of Education, Mike Morath, with broad discretion to evaluate and intervene in school districts that are failing to achieve these aims.

After an extensive, multi-year process, TEA determined that the Houston Independent School District (HISD) exhibited such disharmony amongst members of the board of trustees that the board could not be trusted to manage itself effectively, let alone manage its schools. That determination, and the resulting decision to install a board of managers to run HISD, has already spawned multiple rounds of litigation in state and federal court. This lawsuit, brought by several teachers in HISD and their labor unions, is the latest salvo. For the reasons discussed in this motion, the case should be dismissed on multiple grounds: no plaintiff has standing; sovereign immunity bars several claims; and the Complaint's conclusory allegations fail to meet Rule 12 pleading standards. But before the Court even reaches that question, the

Court should address a preliminary issue: whether venue is proper in the San Antonio Division, where none of the relevant actors are located and where none of the events at issue transpired. Because this case has no connection whatsoever to San Antonio, the Court should transfer this matter to the Austin Division, where TEA and the Commissioner are located and where Defendants made the decisions that Plaintiffs challenge in this lawsuit.

STATEMENT OF FACTS

The Texas Education Code allocates responsibility for governance of an independent school district between various bodies and individuals and provides for extensive involvement by the Commissioner of Education in the management and operations of school districts. *See* Texas Educ. Code § 11.001 *et seq*. When it comes to academic achievement and student performance, trustees share responsibility with the Commissioner.  The board of trustees must "provide oversight regarding student academic achievement and strategic leadership for maximizing student performance." Tex. Educ. Code § 11.1515. If a school district does not satisfy the agency's accreditation criteria, academic performance standards, or financial accountability standards, the Commissioner "*shall* take any of the actions authorized" by the Texas Education Code, including potential installation of a board of managers.  Tex. Educ. Code § 39A.001 (emphasis added).

It is against that backdrop that this lawsuit, among several others, commenced. In June 2019, HISD sued TEA and Commissioner Morath in Travis County state court in related to TEA's oversight of HISD and subsequent investigations into

HISD's potential violations of state law. That case was removed to federal court and heard on a motion for preliminary injunction before the Honorable Lee Yeakel in the Western District of Texas, Austin Division. In his opinion denying the motion for preliminary injunction, Judge Yeakel thoroughly discussed the background of TEA's decision to replace the HISD's board of trustees with a TEA-selected board of managers. Because that discussion is instrumental to providing a full context of Plaintiffs' claims in this case, Judge Yeakel's summary is reproduced in large part below:

> On September 2, 2016, Commissioner Morath notified Houston ISD that he was appointing Dr. Doris Delaney as a conservator to "ensure and oversee district-level support for Kashmere High School [ ] and implementation of the targeted improvement plan" and defined her role as conservator as follows: "In providing district-level support and implementing the targeted improvement plan, Dr. Delaney's role as conservator will include, but is not limited to, the following: 1) Ensuring that a comprehensive needs assessment of the campus is performed; 2) Ensuring that an evaluation of the efficacy of the district's resource allocation to the campus for school years 2015-2016 and 2016-2017 is performed; and 3) Overseeing instructional delivery at the campus for school year 2016-2017."
>
> On January 22, 2019, the Agency initiated the Investigation in response to multiple complaints and requests to its investigative unit to investigate the Board's alleged violations of the Texas Open Meetings Act and provisions of the Texas Education Code that govern independent school districts and the specific powers and duties of a district's board.
>
> . . .
>
> On August 5, 2019, the Agency issued a preliminary report, recommending that the accreditation status of Houston ISD be lowered, a conservator be appointed, and a board of managers be installed. On August 26, 2019, Houston ISD filed a response to the findings and recommendations of the preliminary report and requested an informal administrative review by the Agency.
>
> . . .

> [F]ollowing informal administrative review, the Agency issued a Final
> Special Accreditation Investigation Report (the "Report") on October 30,
> 2019. The Report concludes that the Agency substantiated that Houston
> ISD trustees (1) violated the Texas Open Meetings Act, (2) acted indi-
> vidually on behalf of the Board thereby exceeding the scope of the trus-
> tees' authority, and (3) violated contract-procurement rules while the
> district was selecting a vendor and attempted to tamper with an
> awarded contract.
>
> On November 6, 2019, Commissioner Morath notified Houston ISD that,
> based on the Report, he would lower Houston ISD's 2018–19 accredita-
> tion status to "Accredited-Warned," temporarily suspend the Board, in-
> stall a board of managers to exercise the powers and duties of the Board,
> and appoint a superintendent. In early November the Commissioner in-
> formed the court that a final decision on the recommendations in the
> Report would occur on or after December 20, 2019.

*Houston Indep. Sch. Dist. v. Texas Educ. Agency*, 2019 WL 6894474, at *1–3 (W.D.

Tex. Dec. 18, 2019) (footnotes omitted). Judge Yeakel ultimately denied HISD's mo-

tion for a preliminary injunction, *id.* at *6, and remanded HISD's state-law claims to

state court. *Id.* As Plaintiffs note, in January 2020, on remand, a state court judge

issued a temporary injunction preventing the Commissioner from installing a board

of managers. Plaintiffs' Original Complaint for Declaratory Judgment and Injunctive

Relief, Doc. 1 ("Compl.") ¶ 1. That decision is on appeal.

Plaintiffs tried, and ultimately failed, to intervene in the HISD litigation.

*See Houston Indep. Sch. Dist.*, 2019 WL 6894474, at *3, *7. They now bring this sep-

arate lawsuit asserting that TEA's decision to appoint a board of managers violates

Section 2 of the Voting Rights Act ("VRA"), the Fourteenth Amendment of the United

States Constitution, the Fifteenth Amendment of the United States Constitution, and

the Texas Constitution. *See* Compl. ¶ 112–19. They do not ask for money damages

but instead seek a permanent injunction "prohibiting Defendants TEA and the Commissioner from taking any adverse actions against Houston ISD and/or its Board of Trustees based on the Special Accreditation Investigation or, if adverse action has begun, an injunction preventing TEA from installing a board of managers for HISD because of its immediate and irreparable harm to minority voters." Compl. ¶ 126.

For the reasons discussed below, these claims should be transferred to the Austin Division of the Western District of Texas and should thereafter be dismissed.

## Motion to Transfer Venue

Plaintiffs elected to file this suit in the Western District of Texas, where venue is indisputably proper, *see* 28 U.S.C. § 1391(b)(1) (stating that venue is proper in any district in which a defendant resides), but they nonetheless chose an improper *division* within the Western District.. The venue transfer statute provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Fifth Circuit has explained that "[t]he § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). A motion to transfer venue under Section 1404(a) should be granted when "'the movant demonstrates that the transferee venue is clearly more convenient,' taking into consideration" the following factors:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 288 (citations and quotation marks omitted).

The events giving rise to Plaintiffs' claims against TEA and the Commissioner occurred in the Austin Division, which is where TEA and the Commissioner are located. *See* Compl. ¶¶ 7–8. For example, Plaintiffs focus extensively on TEA's Special Accreditation Investigation, *id.* ¶¶ 17–22, which occurred in the Austin Division. By contrast, this case has no ties to the San Antonio Division. HISD is located in the Southern District of Texas and Plaintiffs' claims solely concern TEA's decisions to select a board of managers for HISD. Plaintiffs do not raise any separate claims concerning any conduct that occurred in the San Antonio Division.

For these reasons, both the private and public interest factors favor a transfer. Sources of proof related to TEA's decision are in the Austin Division. Defendants, their employees, and their records are in Austin. All of Defendants' attorneys and one of Plaintiffs' attorneys are in Austin. None of the Plaintiffs are located in the San Antonio Division, but one of Plaintiffs, Texas American Federation of Teachers, is based in Austin. Compl. ¶ 3. The costs of trial will be lower in Austin.

The public interest factors also favor transfer to the Western District. As discussed above, TEA's decision has resulted in state and federal lawsuits, both of which

have transpired in Austin. Judge Yeakel has already held a preliminary injunction hearing on the same, or at least substantially overlapping, issues, and at that hearing, these same Plaintiffs had an opportunity to present their claims. Judicial economy thus favors transferring this case to the Austin Division and Judge Yeakel, where the courts are already familiar with the intricate issues that gave rise to this suit.

## MOTION TO DISMISS

In addition to their venue arguments, Defendants seek dismissal of Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). And the party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009).

Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir.

2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and brackets omitted).

ARGUMENT

## I.     Plaintiffs Lacks Standing.

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). For the reasons discussed below, neither the individual plaintiffs nor the unions have identified a concrete and particularized injury.

### A.   The individual plaintiffs have not alleged a specific injury.

The individual plaintiffs—who aver that they are teachers at HISD schools and vote in HISD elections—allege that they "will be injured by the policy choices made by the board of managers in relation to [their] existing teacher contract[s]."

8

Compl. ¶¶ 4–6. But Plaintiffs offer no explanation of what the new board of managers' "policy choices" will be, let alone how those policy choices will negatively impact their contracts. Nor do they offer any other specific examples or allegations of how the appointment of a board of managers will lead them to suffer any concrete, particularized injuries. *See Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 606 (S.D. Tex. 2014) ("Unless and until someone who is going to be directly affected by the rebuilt public housing believes they are suffering an injury attributable to unlawful conduct, there is no 'case' or 'controversy' to resolve."). Plaintiffs have no evidence of how the board of managers will operate, let alone that they will run HISD in an unlawful or otherwise detrimental manner to the teachers and students of HISD. That lack of evidence is fatal to their standing to pursue claims for injunctive belief. Indeed, the Texas Legislature has endeavored to protect against the abuse of power and disengagement with the community that Plaintiffs apparently fear. *See, e.g.*, Tex. Educ. Code § 39A.204 (stating that the board of managers "must, if possible, include community leaders, business representatives who have expertise in leadership, and individuals who have knowledge or expertise in the field of education.").

At most, Plaintiffs assert a "federally-protected right[s] to vote for" their preferred candidates. Compl. ¶¶ 4–6. But this contention ignores that "the Constitution does not confer the right of suffrage upon any one and that the right to vote, per se, is not a constitutionally protected right", *see Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9, 102 S. Ct. 2194, 72 L. Ed. 2d 628 (1982), and that in this specific context,

state law expressly provides for TEA to appoint a board of managers to replace an elected board of trustees. *See* Tex. Educ. Code § 39A.201. This comports with Supreme Court decisions authorizing "appointive rather than elective" selections of school board members. *See Sailors v. Bd. of Ed. of Kent Cty.*, 387 U.S. 105, 109 (1967). Neither the federal Constitution nor state law confers a specific right-to-vote for Plaintiffs' preferred candidates for the HISD board.

For these reasons, the individual plaintiffs lack a "concreate and particularized" injury-in-fact that would confer standing for them to bring their claims.

**B. The labor unions cannot demonstrate associational or organizational standing.**

Plaintiffs cannot avoid the above standing concerns by bringing their claims through the labor unions. First, the unions have not established associational standing. A plaintiff cannot have associational standing unless one of its members would have standing to sue individually. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). Thus, the unions must "identify members who have suffered the requisite harm" for injury in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *see also N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010) (requiring evidence of "a specific member").

Because the labor unions have not identified specific members at all (the individual plaintiffs do not even allege that they are members of the unions), let alone individual members with standing, their claims should be dismissed. *See Georgia*

*Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203 (11th Cir. 2018) (holding that the Georgia Republican Party lacked associational standing because it "has failed to allege that a specific member will be injured by the rule, and it certainly offers no evidence to support such an allegation"); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (dismissing under Rule 12(b)(1) because plaintiff not identify a member who was affected by the challenged regulation). And, as discussed above, even assuming that the named individual plaintiffs are members of the unions, those plaintiffs have not identified a concrete and particularized injury that could support their standing.

Nor do the labor unions have standing to sue in their own right. An organization has standing to sue if it satisfies the same Article III requirements applicable to individuals: injury-in-fact, causation, and redressability. *See N.A.A.C.P.*, 626 F.3d at 237 (citing *Lujan*, 504 U.S. at 560–61). "[A]n organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to" conduct its routine "activities—with the consequent drain on the organization's resources." *Id.* at 238 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "Not every diversion of resources to counteract [a] defendant's conduct, however, establishes an injury in fact." *Id.* Rather, any "[s]uch injury must be 'concrete and demonstrable.'" *Id.*

Thus, to establish standing, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine

[] activities,'" and must "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *N.A.A.C.P.*, 626 F.3d at 238).

The labor unions wholly fail to meet this standard. The Houston Federation of Teachers appears to base its standing theory on the idea that the new board of managers is less likely to "uphold the interests of its members" than the old board was, Compl. ¶ 2, but does not allege any facts to support that assumption. The unions do not even identify the members of the board of managers, let alone what policies they will adopt. Just like the individual plaintiffs, the labor unions have not identified a "certainly impending" injury. And the Houston Federation of Teachers' more general interests in "increasing voter turnout and fostering democratic values," Compl. ¶ 2, are not cognizable interests for standing purposes. *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014) ("[T]he law purportedly injures AMOS by hampering AMOS's abstract social interest in maximizing voter turnout. Harm to abstract social interests cannot confer Article III standing.").

Finally, Plaintiffs invoke Section 1983, *see* Compl. ¶ 9, which provides a cause of action only when the plaintiff suffers "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 does not provide a cause of action to plaintiffs claiming an injury based on the violation of a *third party's* rights. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) ("[L]ike all persons who claim a deprivation of constitutional rights, [plaintiffs]

were required to prove some violation of their personal rights."). Thus, Section 1983 follows the general rule that a plaintiff "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (alterations in original). And when "[t]he alleged rights at issue" belong to a third party, rather than the plaintiff, the plaintiff lacks statutory standing, regardless of Article III standing. *Id.*; *see also Conn v. Gabbert*, 526 U.S. 286, 292–93, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999) (holding that a lawyer "clearly had no standing" to bring a § 1983 claim for an injury he suffered as a result of "the alleged infringement of the rights of his client" because a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

The labor unions, as artificial entities, do not have voting rights or other rights that are particular to individuals under the VRA or the Fourteenth or Fifteenth Amendments. *See Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91 (2d Cir. 2015) ("But Plaintiffs—five corporations and a not-for-profit trade organization—are not entitled to vote and have no right to equal representation in the legislature."). They are thus necessarily asserting rights on behalf of third parties. The unions therefore lack statutory standing to sue under Section 1983. Because this follows from the statute itself, Plaintiffs cannot invoke any exceptions related to prudential standing. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d

352, 359 (2d Cir. 2016) ("Because Congress specified in the statute who may sue, pru-
dential standing principles do not apply.").

But even if the unions could invoke prudential-standing exceptions, their com-
plaint does not do so.  The unions do not allege that they have "a 'close' relationship
with" voters, and there is no reason to think voters face any "hindrance" to protecting
their "own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130, 125 S. Ct. 564, 160 L.
Ed. 2d 519 (2004) (noting the Supreme Court has generally "not looked favorably
upon third-party standing").

Because the unions lack associational or organizational standing, and also lack
standing to pursue claims under Section 1983, their claims should be dismissed.

## II.    The Court Should Abstain From Deciding Plaintiffs' Claims.

The *Burford* abstention doctrine also requires the Court to abstain from hear-
ing this case. Under that doctrine, where timely and adequate state-court review is
available, a federal court sitting in equity must decline to interfere with the proceed-
ings or orders of state administrative agencies: (1) when there are difficult questions
of state law bearing on policy problems of substantial public import whose importance
transcends the result in the case then at bar; or (2) where the exercise of federal
review of the question in a case and in similar cases would be disruptive of state
efforts to establish a coherent policy with respect to a matter of substantial public
concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S.
350, 361 (1989) (quotations omitted).

This lawsuit clearly interferes with the proceedings of TEA, a state agency, by asking for injunctive relief that would prohibit TEA from appointing a board of managers for HISD. There are questions of state law that are currently being litigated in the state court proceedings described above, and the state law questions are of substantial public import insofar as they directly impact the administration of HISD and the education of children who are served by HISD. Public education is certainly a matter of substantial public concern about which the State could not establish and maintain a coherent policy if every appointment of a board of managers for underperforming school districts results in federal court litigation.

Accordingly, even putting aside the Plaintiffs' inability to establish standing, the *Burford* abstention doctrine counsels against the Court hearing this matter because of the pendency of the related state-court proceedings.

## III.    Sovereign Immunity Bars Plaintiffs' Claims.

Sovereign immunity bars all of Plaintiffs' claims against TEA with the exception of their VRA claim. As a state agency, *see* Tex. Educ. Code § 7.021, TEA benefits from the same sovereign immunity the State itself has. *See, e.g.*, *City of Austin v. Paxton*, 943 F.3d 993, 1004 (5th Cir. 2019) (dismissing claim against the Texas Workforce Commission and concluding that the claim could not be brought under *Ex parte Young*). Moreover, TEA is not a "person" that can be sued under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Accordingly, Plaintiffs' federal and state-law constitutional claims against TEA (Counts II, III and IV) of their Complaint), which are brought pursuant to Section 1983, should be dismissed.

Sovereign immunity also bars Plaintiffs' state-law constitutional claim against Commissioner Morath in his official capacity. The *Ex parte Young* exception to sovereign immunity "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with *federal* law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (emphasis added). In *Pennhurst State School & Hospital v. Halderman*, the Supreme Court made clear that the *Ex parte Young* exception is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Plaintiffs' state-law claims against Commissioner Morath in his official capacity are thus barred by immunity and should be dismissed. *See also, e.g.*, *Bisong v. Univ. of Houston*, 2006 WL 2414410, at *4 (S.D. Tex. Aug. 18, 2006) (dismissing tortious interference claim against the individual defendants in their official capacities as barred by immunity because the claim is not based on a violation of federal law); *Perez v. Texas A&M Univ. at Corpus Christi*, 2013 WL 6230353, at *10 (S.D. Tex. Dec. 2, 2013) ("Enforcing the Texas Constitution—or any other state law for that matter-is not a sufficient basis under *Ex parte Young* to exercise federal jurisdiction over state officials.").

## IV.   This Suit Should Be Dismissed For Failure to State a Claim.

Plaintiffs' claims fail on the merits, too. First, Plaintiffs' VRA and Fifteenth Amendment claims does not make sense in this context.  Section 2 of the VRA speaks to how to run elections, not whether to have elections in the first place, and the Fif-

teenth Amendment functions in a similar manner in this context. *See Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir. 1981), *aff'd sub nom. Hightower v. Searcy*, 455 U.S. 984, 102 S. Ct. 1605, 71 L. Ed. 2d 844 (1982) (noting that in "an appointive rather than an elective scheme," the district court correctly found that the VRA and the Fifteenth Amendment did not apply); *Phillips v. Snyder*, 836 F.3d 707, 720–21 (6th Cir. 2016) (holding Section 2 does not apply to a Michigan law allowing emergency managers to take over municipalities or public school systems); *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 354 (6th Cir. 2002) (upholding state takeover of local school board under Section 2).  Texas "could, of course, exclude its [school boards] from the coverage of the Voting Rights Act by changing to a system in which [school board members] are appointed." *Chisom v. Roemer*, 501 U.S. 380, 401, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991). Plaintiffs offer no support in their Complaint for their bald assertion that allowing appointed officials take over one school district would be subject to the VRA. *See, e.g.*, *Quinn v. Illinois*, 887 F.3d 322, 324 (7th Cir. 2018) (Easterbrook, J.) ("The Voting Rights Act has been on the books for 53 years, and as far as we are aware no court has understood § 2 to require that any office be filled by election.").

But even taking the VRA claim on its own terms, Plaintiffs are trying to establish the *Gingles* factors, including "that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate." *Thornburg v. Gingles*, 478 U.S. 30, 51, 106 S. Ct. 2752, 92 L. Ed. 2d 25 (1986); *see also* Compl. ¶ 42 (alleging "Anglos vote as a politically cohesive bloc against minority-

preferred candidates"). But Plaintiffs cannot possibly establish that when they have also alleged that HISD's voting population is only about 9% white. *See* Compl. ¶ 13. Moreover, Plaintiffs have not offered any plausible, non-conclusory allegations that TEA's decision was "on account of race or color." 52 U.S.C. § 10301(a). *See Ross v. Texas Educ. Agency*, 2008 WL 4746773, at *7 (S.D. Tex. Oct. 27, 2008) ("By Plaintiffs['] own admission, every voter in the NFISD electorate, regardless of race, is affected equally by the appointment of the board of managers, and there has been no evidence that a particular minority group within the NFISD electorate has had their voting power diluted when compared to non-minority voters in the NFISD electorate.").

For that exact reason, Plaintiffs' constitutional claims fail as well. The decision to install a board of managers applies to all voters equally, and is thus non-discriminatory. *See Quinn*, 887 F.3d at 325 (upholding system for appointing school board against equal protection challenge); *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 354 (6th Cir. 2002) (upholding state takeover of local school board under Fourteenth and Fifteenth Amendments). And to adequately plead an Equal Protection Clause claim, a plaintiff must typically allege that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (internal quotation marks and citation omitted). This requires allegations that show "the existence of purposeful discrimination" motivating the

state action that caused the complained-of injury. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Plaintiffs have not made a sufficient showing of unequal treatment or discriminatory intent on any of their claims to survive a motion to dismiss. Even assuming that Plaintiffs have plausibly alleged that the decision to appoint a board of managers will disparately impact minority voters, which they have not, Plaintiffs have not alleged with the requisite specificity that Commissioner made his decision because of that impact. *See Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc) ("Legislators' awareness of a disparate impact on a protected group is not enough: the law must be passed *because of* that disparate impact." (emphasis in original)).

Instead, the undisputed facts demonstrate that the Commissioner had a wealth of rational, nondiscriminatory motivations for appointing a Board of managers for HISD.  For years, HISD operated low performing campuses, including Wheatley High School and Kashmere High School. In 2015, the Texas Legislature passed new legislation requiring the Commissioner to either close persistently low performing campuses or appoint a board of managers. After Wheatley High School received its seventh consecutive failed academic rating, the Commissioner notified HISD that he intended to appoint a board of managers due to Wheatley's persistently low performance, a serious violation of the Texas Open Meetings Act, and because TEA had a conservator appointment that exceeded two years. *See* <u>Exhibit A</u>, TEA Appointment

Letter (Nov. 6, 2019).[1] Although Plaintiffs cite to the Appointment Letter and aver that TEA acted with discriminatory motive, they wholly fail to address the nondiscriminatory reasons that TEA cogently and painstakingly detailed in its explanation to HISD and to the members of the community who had been let down by HISD's leadership. In the absence of any plausible allegations of discrimination, Plaintiffs' claims cannot survive.

Accordingly, Plaintiffs have failed to state plausible claims that TEA or the Commissioner violated the VRA or the Constitution.

### CONCLUSION

Plaintiffs' claims should be transferred to the Austin Division and thereafter be dismissed.

---

[1] The Court may take judicial notice of the TEA Appointment Letter because it is referenced in and integral to Plaintiffs' Complaint. *See* Compl. ¶ 20; *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 506 (S.D. Tex. 2017) ("A court may 'consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint.'" (citation omitted)) (Rosenthal, J.).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division


/s/ Michael R. Abrams
ANDREW B. STEPHENS
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24079396
MICHAEL R. ABRAMS
Assistant Attorney General
Texas Bar No. 24087072

Office of the Attorney General
General Litigation Division
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

**Attorneys for Defendants**

## CERTIFICATE OF FILING AND SERVICE

I certify that on April 13, 2020, this document was served through the Court's CM/ECF Document Filing System or through electronic mail, upon the following counsel of record:

Martin Golando
GARZA GOLANDO MORAN, PLLC
405 N. St. Marys, Suite 700
San Antonio, TX 78205
Phone:  210-892-8543
martin.golando@gmail.com

Martha Powell Owen
DEATS, DURST & OWEN, PLLC
1204 San Antonio St., Suite 203
Austin, TX 78701
512-474-6200
mowen@ddollaw.com

Jose Garza
LAW OFFICE OF JOSE GARZA
7414 Robin Rest Dr.
San Antonio, TX 78209
210-392-2856
jgarza@trla.org

/s/ Michael R. Abrams
MICHAEL R. ABRAMS
Assistant Attorney General