## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HOUSTON FEDERATION OF TEACHERS, et al., | § § § | |
| *Plaintiffs,* | § § | Civil Action No.  SA-20-CV-222-XR |
| v. | § § | |
| THE TEXAS EDUCATION AGENCY and MIKE MORATH, Commissioner of Education, in his Official Capacity, | § § § § | |
| *Defendants.* | § § | |

### ORDER ON MOTION TO TRANSFER VENUE

On this date, the Court considered Defendants' Motion to Transfer Venue to the Austin Division pursuant to § 1404(a). Docket no. 8. After careful consideration, the Court grants the motion.

### Background and Applicable Law

This case is a challenge to the Texas Education Agency's ("TEA") decision to install a board of managers to run the Houston Independent School District ("HISD"). Suit is brought by the Houston Federation of Teachers, a labor union that represents employees of HISD, the Texas American Federation of Teachers, a statewide labor organization that represents employees of public school districts across Texas, and individuals Jackie Anderson, Maxie Hollingworth, and Daniel Santos, who reside in Harris County and within the boundaries of HISD.

In 2016, the TEA notified HISD that it was appointing a Conservator for Kashmere High School. In January 2019, the TEA initiated a Special Accreditation Investigation in response to multiple complaints and requests to investigate the HISD Board of Trustees' alleged violations

of the Texas Open Meetings Act and provisions of the Texas Education Code that govern independent school districts and the specific powers and duties of a district's board. In March 2019, the Conservator issued a directive to the Board of Trustees and administration of HISD to immediately suspend its search for a new superintendent until the TEA completed its Special Accreditation Investigation.

On May 24, 2019, the TEA prepared a second amended Notice of Special Accreditation Investigation describing complaints that the HISD Board of Trustees may have violated the contract procurement process, competitive bidding, awarding, and management of contracts.

On June 27, 2019, HISD sued the TEA and Commissioner Mike Morath in state court in Travis County. The TEA removed the case to the Austin Division of the Western District on July 3, 2019, and it was assigned to Judge Lee Yeakel. 1:19-CV-00684-LY. The lawsuit sought declaratory relief and an injunction prohibiting the TEA from taking any regulatory actions against HISD and/or its Board based on either the Special Accreditation Investigation or a recent Texas Attorney General Opinion.

On August 5, 2019, the TEA issued a preliminary report, recommending that the accreditation status of HISD be lowered, a conservator be appointed, and a board of managers installed. Following objections by HISD and informal administrative review, the TEA issued a Final Special Accreditation Investigation Report on October 30, 2019. The Report concludes that the Agency substantiated that HISD trustees (1) violated the Texas Open Meetings Act, (2) acted individually on behalf of the Board thereby exceeding the scope of the trustees' authority, and (3) violated contract-procurement rules while the district was selecting a vendor and attempted to tamper with an awarded contract.

On November 4, 2019, HISD amended its Complaint to assert claims for First Amendment Retaliation, Unlawful Speech Restriction, Overbreadth, Unconstitutional Vagueness, Procedural Due Process Violations, violations of the Voting Rights Act, violations of Title VI of the Civil Rights Act of 1964, Violations of the Equal Protection Clause, and for Declaratory Judgment.

On November 6, 2019, Commissioner Morath notified HISD that, based on the Report, he would lower HISD's 2018-19 accreditation status to "Accredited-Warned," temporarily suspend the Board, install a board of managers to exercise the powers and duties of the Board, and appoint a superintendent. In early November, the Commissioner informed Judge Yeakel that a final decision on the recommendations in the Report would occur on or after December 20, 2019.

On December 18, 2019, Judge Yeakel issued an Order. Therein, he noted that Plaintiff HISD alleged that the TEA, Morath, and Conservator Doris Delaney violated federal and state law during the Agency's Special Accreditation Investigation and will further violate such laws by replacing HISD's elected Board of Trustees with a board of managers appointed by the TEA. HISD sought preliminary injunctive relief to prevent the Commissioner from interfering in the selection of a new or interim superintendent, replacing the Board with a board of managers appointed by the TEA, and sanctioning HISD as a result of the Investigation. Judge Yeakel dismissed HISD's federal claims for lack of standing and remanded the remaining state-law claims. Judge Yeakel also withdrew his prior order granting the Federation's motion to intervene as improvidently granted because the interests of the Federation and HISD diverge significantly.

In January 2020, on remand, a state court judge issued a temporary injunction preventing the Commissioner from installing a board of managers, and that decision in on appeal.

The Federation and individual Plaintiffs now bring this lawsuit asserting that the TEA's decision to appoint a board of mangers violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments, and seeking injunctive relief. Defendants have moved to dismiss and to transfer venue, and urge the Court to consider the venue transfer motion first. Plaintiffs have responded in opposition.

The venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). A motion to transfer venue pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citing *In re Volkswagen of Am. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).

4

**Analysis**

Plaintiff Houston Federation of Teachers is located in Houston, Texas. Plaintiff Texas American Federation of Teachers is a statewide labor organization with its principal office in Austin, Texas. Plaintiffs are individual residents and voters in Harris County, Texas. Defendant TEA is a state agency headquartered in Austin. All of the events underlying this lawsuit occurred in Austin and Houston; none occurred in San Antonio.

As to the first factor, relative ease of access to sources of proof, Defendants contend that the events giving rise to Plaintiffs' claims occurred in the Austin Division, where the TEA and the Commissioner are located. Most importantly, the Special Accreditation Investigation occurred in the Austin Division. Defendants contend that this case has no ties to San Antonio, as HISD is in Houston, in the Southern District of Texas. As a result, Defendants argue, all sources of proof are in the Austin Division, as Defendants and TEA employees and records are in Austin. Plaintiffs complain that Defendants offer no evidence as to the sources of evidence solely present in Austin, but that fact appears to be self-evident. Plaintiffs contend that there are also important documents and witnesses in San Antonio because they allege that TEA has sought to replace the elected Boards of Trustees of several school districts in San Antonio. Plaintiffs therefore contend that this factor is neutral because important documents are located in both divisions.

This factor is concerned with relative ease of access, not absolute ease of access. *Radmax*, 720 F.3d at 288 (citing *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.")). The case has no ties to San Antonio, and all of the

events occurred and thus sources of proof are in Austin (or Houston). The fact that Plaintiffs wish to have witnesses testify about similar actions in San Antonio (for which they bring no claims), has only marginal relevance, if any, to the facts of this case concerning HISD, and thus the relative ease of access clearly favors Austin. Where all of the documents and physical evidence are located in another division, this factor weighs in favor of transfer. *Radmax*, 720 F.3d at 288. The Court finds that this factor weighs strongly in favor of transfer.

As to "the availability of compulsory process to secure the attendance of witnesses," when all of the witnesses are within the subpoena power of either court, as here, this factor is neutral. *Radmax*, 720 F.3d at 288.

Considering the cost of attendance for willing witnesses, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 204–05 (5th Cir. 2004) (per curiam). In *Volkswagen II*, the Court reiterated that guidance and characterized it as a 100–mile "threshold" or "rule." *Volkswagen II*, 545 F.3d at 317. The Court did not imply, however, that a transfer within 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles. *Radmax*, 720 F.3d at 289.[1] In *Radmax*, the Fifth Circuit granted mandamus relief when the factors weighed in favor of transfer despite there being only a 60-mile distance between divisions.

---

[1] The *Radmax* panel noted that the district court's anticipation "that [the requirement for obtaining mandamus] will rarely be satisfied in any case involving a requested intra-district transfer between divisions within 100 miles of each other" was "off the mark." *Radmax*, 720 F.3d at 289 n.6.

Plaintiffs assert that only non-parties should be considered and concede that "it is possible that the testimony of some non-parties may be required." However, § 1404(a) transfers are concerned with convenience to the parties as well non-party witnesses, and thus all potential witnesses should be considered, though non-party witnesses may be afforded greater consideration. *See Volkswagen II*, 545 F.3d at 317 (considering that the plaintiffs lived in the Dallas Division). Defendants and one Plaintiff are located in Austin. Further, TEA employees in Austin would need to testify about the investigation. Although the distance between Austin and San Antonio is approximately 80 miles, it is unquestionably less costly for Austin witnesses to attend trial in Austin. *In re Volkswagen of Am., Inc ("Volkswagen I")*, 545 F.3d 201, 205 (5th Cir. 2004) (noting that it is an "obvious conclusion" that it is more convenient for witnesses to testify at home). No witnesses having knowledge of the underlying facts of the HISD investigation have been identified as living in the San Antonio Division.[2]

As to witnesses from Houston, Austin is somewhat closer (approximately 165 miles) than is San Antonio (approximately 197 miles) and thus somewhat more conveniently located and less costly for travel by car. The cost for witnesses attending from Houston would be substantially similar in Austin or San Antonio, though Plaintiffs contend it would be less costly to travel to San Antonio from Houston because hotels are cheaper and airline rates are "equal or greater" to Austin. Even if the costs for Houston witnesses are slightly higher for Austin than San Antonio, that cost difference is greatly outweighed by the cost of Austin witnesses having to travel to San Antonio versus not having to travel at all. Witnesses not only suffer monetary

---

[2] Plaintiffs further state they anticipate hiring an expert who resides in San Antonio, and the additional costs of housing experts in Austin compared to San Antonio will increase litigation costs for Plaintiffs. But this fact is as yet hypothetical, and Defendants may hire an expert from Austin that would balance it out.

costs, but also the personal costs associated with being away from work, family, and community. *In re Volkswagen II*, 545 F.3d at 317. Houston witnesses have to be away from home for trial in either San Antonio or Austin, while Austin witnesses would not have to travel at all if trial were in Austin. Accordingly, the Court finds this factor weighs in favor of transfer.

Next, the Court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." Garden variety delay associated with transfer is not to be taken into consideration. *Radmax*, 720 F.3d at 289. Defendants argue that all of Defendants' attorneys and one of Plaintiffs' attorneys are in Austin, but the Court does not consider the convenience of counsel in its analysis. *In re Volkswagen*, 371 F.3d at 206 (citing *In re Horseshoe Entm't*, 337 F.3d at 429,434 ("[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue")). Plaintiffs contend that although the Federation has an office in Austin, it has more than 4600 members in the San Antonio area, some of whom are witnesses to TEA investigations in their districts and in their schools and can provide insight into the investigative process and TEA's disparate treatment of minority-majority school districts. However, as noted above, testimony about what occurred in San Antonio would appear to have only marginal, if any, relevance in this case. Thus, the Court finds this factor neutral.

The fifth factor to consider is "the administrative difficulties flowing from court congestion." Neither party addresses this factor and the Court finds that it is neutral.

The sixth factor is "the local interest in having localized interests decided at home." Neither Austin nor San Antonio has a strong localized interest in this dispute. However, the events underlying the suit occurred in Austin, the TEA is located in Austin, and the Texas

Federation has its principal office in Austin, giving Austin somewhat of an interest in the matter even though it affects a school district in Houston. There is no relevant factual connection to San Antonio. *In re Volkswagen II*, 545 F.3d at 318 (local interest favored transferee forum where the case had no relevant factual connection to transferor forum). The Court finds this factor is neutral or weighs in favor of transfer.

The seventh factor is "the familiarity of the forum with the law that will govern the case." Although both courts are equally capable of applying the relevant law, the Austin Division (specifically Judge Yeakel) has already held a preliminary injunction hearing on similar issues, heard Plaintiffs' arguments, and is familiar with the general issues. Defendants contend that the fact that Judge Yeakel has already considered and addressed the underlying facts in this lawsuit is alone enough for transfer to Austin, but, as Plaintiffs point out, although Judge Yeakel heard Plaintiffs' arguments, the motion to intervene was later denied as improvidently granted and there was no adjudication of Plaintiffs' claims in Judge Yeakel's court. Further, there is no case currently pending in the Austin Division; it is in state court. Plaintiffs contend that this Court is arguably more familiar with voting rights legislation. While this Court may have familiarity with voting rights legislation in the statewide redistricting context, it has no more familiarity with voting rights law in this context or in general than the judges in the Austin Division. The Court finds this factor to be neutral or weighing slightly in favor of transfer.

And the last factor, "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law" is neutral.

The Court finds that *In re Radmax* controls the disposition of this motion. In *Radmax*, the Fifth Circuit found a clear abuse of discretion and granted mandamus relief for an order

denying transfer to the Tyler Division from the Marshall Division (a distance of only 60 miles) when the only factor weighing against transfer was the plaintiff's choice of forum and the case had no connection to the transferor forum and all the events, facts, witnesses, and other sources of proof were in the transferee forum. *Radmax*, 720 F.3d at 290. Because all the factors here are either neutral or weigh in favor of transfer, as in *Radmax*, transfer is required.

**Conclusion**

Pursuant to *In re Radmax*, the Court finds that transfer of this case to the Austin Division is required. Defendants' Motion to Transfer Venue (docket no. 8) is therefore GRANTED. The Clerk is directed to transfer the case and, once docketed in the Austin Division, to close this case.

It is SO ORDERED

SIGNED this 28th day of May, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE